IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOUGLAS M. CROWE,           )
                            )
        Plaintiff,          )
                            )
    v.                      )
                            )   No. 07 C 5289
JOHN J. KEARIN, et al.,     )
                            )
        Defendants.         )

## MEMORANDUM OPINION

Before the court is the motion of defendants John J. Kearin, Vincent Donofrio, and the City of Highwood to disqualify plaintiff's counsel. For the following reasons, the motion is granted.

## BACKGROUND

This is an action that arises out of the August 2006 immobilization, or "booting," of plaintiff's vehicle by City of Highwood police officers. The vehicle was booted pursuant to the City's "Ordinance Amending the Traffic and Motor Vehicle Code of 1975 Regarding the Immobilization of Motor Vehicles for Unpaid Parking Tickets" (the "Booting Ordinance" or "Ordinance"). The First Amended Complaint names as defendants the City; John J. Kearin, the City's police chief; Vincent Donofrio, the City's mayor; Michael Zimmermann, a lawyer whose firm drafted the Booting Ordinance; and "unknown/unidentified" City police officers.

According to plaintiff, the Booting Ordinance cannot be applied retroactively to parking tickets incurred prior to its enactment. Plaintiff also complains that the Ordinance is unconstitutional for failure to provide due process; that he was deprived of a "pre-immobilization hearing" as provided for in the Ordinance; that defendants failed to comply with the ordinance in several other ways; and that defendants singled him out by demanding full payment of his parking tickets pursuant to the Ordinance while routinely settling other persons' tickets for lesser sums. Plaintiff claims that he has made numerous demands on the City, Kearin, Donofrio, and Zimmermann for the return of his vehicle and offered to settle the matter for $1,200.00, but the City "insist[s] on payment of thousands of dollars of fees" under the Ordinance "in order to release" the vehicle. (First Am. Compl. ¶¶ 28-31.) Plaintiff alleges various constitutional violations under § 1983 as well as several violations of state law.

Defendants now move to disqualify plaintiff's counsel, Paul P. Diambri, who formerly represented the City in a broad range of legal matters.

## DISCUSSION

Defendants contend that Mr. Diambri is disqualified pursuant to Rule 83.51.9 of the Local Rules of Professional Conduct, which is titled "Conflict of Interest: Former Client." The relevant portion of the Rule states:

- 3 -

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure.

N.D. Ill. Local R. 83.51.9(a).

The burden is on the moving party to show facts necessitating disqualification. Amurol Confections Co. v. Morris Nat'l, Inc., No. 03 C 1264, 2003 WL 21321344, at *2 (N.D. Ill. June 5, 2003) (Grady, J.). When appropriate, disqualification protects the attorney-client relationship by ensuring that clients receive the undivided loyalty of their counsel. Id. At the same time, it is well settled that disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary." Owen v. Wangerin, 985 F.2d 312, 317 (7th Cir. 1993). Unwarranted disqualifications can create unnecessary delays and deprive parties of their chosen legal advisor. Amurol, 2003 WL 21321344, at *2. The Seventh Circuit has instructed that, although there obviously are situations where disqualification motions are both legitimate and necessary, such motions should be viewed with "extreme caution" because they can be misused in order to harass. See Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982).

The Seventh Circuit uses a three-part analysis to determine whether disqualification is warranted:

> First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a

>     substantial relationship does exist, we must next
>     ascertain whether the presumption of shared confidences
>     with respect to the prior representation has been
>     rebutted. If we conclude this presumption has not been
>     rebutted, we must then determine whether the presumption
>     of shared confidences has been rebutted with respect to
>     the present representation. Failure to rebut this
>     presumption would also make the disqualification proper.

Cromley v. Board of Educ., 17 F.3d 1059, 1064 (7th Cir. 1994) (quoting Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir. 1983)). This analysis embodies two principles of professional responsibility: protecting a client's confidences from disclosure and possible use against him as well as avoiding the appearance of impropriety. LaSalle Nat'l Bank v. County of Lake, 703 F.2d 252, 255 (7th Cir. 1983).

Our first step, therefore, is to determine whether a "substantial relationship" exists between the subject matter of Mr. Diambri's prior and present representations. This inquiry involves factually reconstructing the scope of the prior legal representation as well as determining whether it is reasonable to infer that confidential information would have been given to a lawyer representing a client in those matters and whether that information is relevant to the issues pending in the instant litigation. Id. at 255-56.

As for the prior representation, Mr. Diambri represented the City of Highwood until mid-2005 in a wide range of matters. It appears that he was essentially the primary attorney for the City for a number of years. One of the matters of representation was

the collection of unpaid parking tickets, including various unpaid tickets of plaintiff Douglas Crowe. From documentation attached to defendants' motion, it appears that Mr. Diambri's firm was successful in collecting on some of Mr. Crowe's tickets. Defendants also point out that in July 2006, after he no longer represented the City, Mr. Diambri sent the City a Notice of Attorney's Lien in which he claimed a right to forty percent (the agreed contingent fee) on any and all amounts collected by the City for parking tickets that were forwarded to his office for collection prior to June 2005. According to defendants, these unpaid tickets in which Mr. Diambri claimed an interest include various of plaintiff's tickets, which eventually formed the basis for the booting of plaintiff's vehicle.

Mr. Diambri admits that he represented the City in the collection of unpaid parking tickets, which included sending out collection letters, notices of intent to file suit, and in some cases filing suit in small claims court. Mr. Diambri sidesteps, however, the fact that some of the tickets he was retained to collect (and some of which he was successful in collecting) were incurred by plaintiff. The thrust of plaintiff's brief, which misses the mark, is that Mr. Diambri should not be disqualified because he did not draft the Booting Ordinance at issue in this action and because the administration of the ordinance occurred when Mr. Diambri no longer was City attorney. But the relevant

connection here is the collection of unpaid parking tickets, not the drafting of ordinances pertaining to booting.

Mr. Diambri argues that it is reasonable to assume that he was given confidential information because he was the former City attorney, but that (without elaboration) "there is absolutely no reasonable inference that he would have been given any confidential information as to parking tickets." (Pl.'s Resp. at 9.) Defendants assert that it is reasonable to infer that Mr. Diambri was given confidential information concerning parking tickets when he represented the City, such as strategies concerning the settlement of tickets; litigation strategies; or a direction to pursue collection from certain individuals more vigorously than others because of the amount of fines, the person's ability to pay, or the City's desire to make an example. Mr. Diambri completely fails to address this specific argument. Instead, he simply states, without support, that "it is axiomatic that there are no shared confidences that exist regarding parking tickets in general, or this matter specifically." (Pl.'s Resp. at 7.) We disagree; the types of confidential information cited by the plaintiffs are wholly plausible examples of confidences that a municipality may share with its attorney with respect to the collection of parking tickets.

It is defendants' view that there is a substantial relationship between the prior representation and the current

representation, given that Mr. Diambri on behalf of plaintiff is now contesting the enforcement of some of the very same tickets that the City previously retained him to collect. Mr. Diambri fails to address the defendants' argument that a substantial relationship therefore exists between the prior and current representations. Instead, he characterizes the collection of unpaid tickets as "a trifling matter of representation," Pl.'s Resp. at 7, because it involved little legal work.[1] We are unpersuaded. It is the nature of the subject matter and not so much the amount of work that was required that controls our analysis. It is reasonable to infer that Mr. Diambri would have received confidential information from the City relating to collection on unpaid parking tickets, such as the types of information cited by defendants. It is undisputed that some of the parking tickets that Mr. Diambri was retained to collect were incurred by plaintiff. It is also undisputed that those tickets underlie, in part, the City's booting of plaintiff's vehicle, which plaintiff now claims violates his civil rights. Accordingly, we find that Mr. Diambri's prior work is subtantially related to the current representation.

---

[1] Mr. Diambri also maintains that the notice of attorney's lien that he sent to the City was applicable only to cases in which a payment agreement was reached with or judgment was entered against a particular parking violator, unlike plaintiff's case. Mr. Diambri states that he "claims absolutely no interest in the parking tickets of Mr. Crowe, or any other parking ticket which was not collected, or a judgment not rendered." (Pl.'s Resp. at 8.) The attorney's lien is not a factor in our conclusion that a substantial relationship between the two representations exists.

Having found a substantial relationship between the two representations, we are entitled to presume that Mr. Diambri received confidential information when he represented the City. LaSalle Nat'l Bank, 703 F.2d at 256. This presumption is rebuttable, but only if the challenged attorney can show "clearly and effectively" that he was not privy to his client's confidences. Freeman, 689 F.2d at 723. A "very strict standard of proof must be applied to the rebuttal of this presumption . . . and any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification." LaSalle Nat'l Bank, 703 F.2d at 257.

Mr. Diambri simply states in his affidavit: "I did not receive any confidential client information relative to the collection of any parking tickets referred to our office the collection [sic] by the City of Highwood. In addition, specifically, I did not receive any confidential information whatsoever regarding the collection of the parking tickets of the Plaintiff in this cause." (Aff. of Paul P. Diambri, ¶ 5.) We find that these bare (not to mention qualified) assertions do not clearly and persuasively rebut the presumption of shared confidences, especially considering that Mr. Diambri was the primary City attorney and that he does not address the specific and plausible examples of confidential information that the City could have shared with its counsel. Courts have held that similar conclusory denials of the receipt of confidential

information do not satisfy the requisite strict standard of proof. See, e.g., LaSalle Nat'l Bank, 703 F.2d at 257; City of Waukegan v. Martinovich, No. 03 C 3984, 2005 WL 3465567, at *4 (N.D. Ill. Dec. 16, 2005).  Mr. Diambri has likewise failed to rebut the presumption of shared confidences with respect to the present representation.

We recognize that disqualification is a "drastic measure", Owen, 985 F.2d at 317, but it is necessary in this case because there is a substantial relationship between Mr. Diambri's prior and current representations and plaintiff has failed to rebut the presumption of shared confidences.

## **CONCLUSION**

For the foregoing reasons, defendants' motion to disqualify plaintiff's counsel is granted.  A status hearing is set for April 2, 2008 at 11:00 a.m. to discuss the next steps in this case.  In the meantime, plaintiff should attempt to retain substitute counsel, who should appear at the status hearing.  If plaintiff has not retained substitute counsel by that time, plaintiff should appear himself at the status hearing to discuss his progress.

DATE:     March 4, 2008

ENTER:    _____

John F. Grady, United States District Judge